1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                        ----oo0oo----

11   SCOTTSDALE INSURANCE COMPANY,
                                       NO. CIV. S-02-1890 WBS GGH
12           Plaintiff,

13      v.                             MEMORANDUM AND ORDER RE:
                                       MOTION FOR SUMMARY JUDGMENT
14
     HENRY MORENO, ROSE A. MORENO,
15   LA MANSION DEL RIO, WALTER
     HARVEY, and DOES 1 through
16   100, inclusive,

17           Defendants.

18                        ----oo0oo----

19           Upon remand after the Ninth Circuit's reversal of this

20   court's order granting plaintiff's motion for summary judgment,[1]

21   plaintiff again moves for summary judgment pursuant to Federal

22   Rule of Civil Procedure 56.  In its pending motion, plaintiff

23   argues that there is no coverage under the policy for the

24   judgment obtained by defendant Walter Harvey against defendant

25   Rose A. Moreno because there was no "occurrence."

26           The relevant facts are set forth in this court's

27   _____

28      [1]   Scottsdale Ins. Co. v. Moreno, No. 03-17061, 2005 WL
     1253915 (9th Cir. May 27, 2005).

                                1

September 18, 2003 order.  In general, "[t]here is little, if
any, dispute between the parties as to the underlying facts
relative to this determination."  (Def.'s Opp'n to Pl.'s Mot. for
Summ. J. 10.)

By its terms, the policy equates "occurrence" with
"accident," but does not specifically define accident.
California courts have for some time, however, supplied a default
definition that has been routinely applied to policies similar to
plaintiff's.  An "accident," as defined "within the terms of an
accident policy, is an unexpected, unforeseen, or undesigned
happening or consequence from either a known or an unknown
cause."  Geddes & Smith, Inc. v. Saint Paul-Mercury Indem. Co.,
334 P.2d 881, 884 (Cal. 1959) (quoting Hauenstein v. Saint
Paul-Mercury Indem. Co., 65 N.W.2d 122, 126 (Minn. 1954)); Collin
v. Am. Empire Ins. Co., 21 Cal. App. 4th 787, 804 (1994)
(recognizing that unless defined, the "common law construction of
the term 'accident' becomes part of the policy").  In other
words, given the ordinary meaning of accident, Commercial General
Liability ("CGL") policies, like plaintiff's, cover events
"'arising from extrinsic causes; occurring unexpectedly or by
chance; or happening without intent or through carelessness.'"
St. Paul Fire & Marine Ins. Co. v. Superior Court, 161 Cal. App.
3d 1199, 1202 (1984) (quoting Webster's Ninth New Collegiate
Dict. 49 (1983)) (alterations in original).

Significantly, California courts have made clear that
"[a]n intentional act is not an 'accident' within the plain
meaning of the word."  Royal Globe Ins. Co. v. Whitaker, 181 Cal.
App. 3d 532, 537 (1986).  This rule is not absolute, however.

1  The courts have also held that deliberate acts can qualify as

2  accidents when "some additional, unexpected, independent, and

3  unforeseen happening occurs that produces the damage." <u>Merced</u>

4  <u>Mut. Ins. Co. v. Mendez</u>, 213 Cal. App. 3d 41, 43 (1989).  The

5  insured must "intend[] <u>all</u> the acts that resulted in the victim's

6  injury . . . ."  <u>See</u> <u>id.</u> (emphasis added).  His intention to

7  cause, or not cause, an <u>injury</u> is irrelevant.  <u>See</u> <u>Collin</u>, 21

8  Cal. App. 4th at 804 ("'[A]ccident' refers to the insured's

9  intent to commit the act giving rise to liability, as opposed to

10 his or her intent to cause the consequences of that act.").

11      The parties do not dispute that Moreno deliberately

12 disposed of logs and other debris by placing these items in the

13 river.  Additionally, the evidence conclusively shows that Moreno

14 was at least aware that his disposal activities had in the past

15 damaged Harvey's facility to some extent.

16      However, although Moreno may have, as plaintiff argues,

17 acted "with knowledge that his[] conduct may well result in a

18 subsequent happening from which damages flow," these

19 circumstances are not determinative of liability.  (Pl.'s Mot.

20 for Summ. J. 18.)  In California, the insured's intentional act

21 must be <u>directly</u> responsible for the injury.  <u>Scheffler v.</u>

22 <u>Allstate Ins. Co.</u>, 196 F. Supp. 2d 1003, 1006 (N.D. Cal. 2002).

23 "[A]n 'accident' exists when <u>any</u> aspect in the causal series of

24 events leading to the injury or damage was unintended by the

25 insured and a matter of fortuity."  <u>Merced Mut. Ins.</u>, 213 Cal.

26 App. 3d at 50.

27      Here, Moreno's intentional act of placing debris in the

28 river, while part of the series of events that led to the

3

1    destruction of Harvey's property, did not directly cause the

2    damage at issue.  Moreno did not place the offending log beneath

3    Harvey's barge.  Significantly, he did not even weigh the log

4    down to ensure that it would sink.  In fact, based on the facts

5    before the court, it appears that his intention was that it would

6    float away, as most of the other debris apparently did.  (Harvey

7    Decl. ¶ 11.)  Through arguably fortuitous events that occurred

8    after Moreno deliberately disposed of some debris, this

9    particular log sank and forces of nature put it in a position

10   where it caused significant damage.  (See id. ¶¶ 6-7.)  Thus, a

11   reasonable jury could find that secondary, unintended events,

12   rather than Moreno's deliberate acts, caused damage covered by

13   the policy.  Unfortunately for plaintiff, "accidents" do include

14   the results of careless acts and extrinsic causes.  St. Paul Fire

15   & Marine Ins. Co., 161 Cal. App. 3d at 1202.

16          In support of its argument that Moreno was required to

17   take precautionary measures to eliminate known consequential

18   exposures, plaintiff relies on two cases that are easily

19   distinguishable.  First, plaintiff cites to Meridian Oil

20   Production, Inc. v. Hartford Accident & Indemnity Co., 27 F.3d

21   150, 152 (5th Cir. 1994), where the court held that an oil

22   company could not claim that it "accidently" caused pollution

23   when it failed to take measures to contain the hazardous wastes

24   produced as byproducts of its drilling operations.  Similarly,

25   plaintiff also relies on Harleysville Mutual Casualty Co. v.

26   Harris & Brooks, 235 A.2d 556, 559 (Md. 1967), where a land

27   clearing contractor was not covered by his accident insurance

28   policy when he burned a pile of trees without taking

4

precautionary measures to prevent smoke damage to nearby houses. Assuming that these cases are consistent with current California law, which as explained below recognizes a distinction between accidents and negligence, both <u>Meridian Oil</u> and <u>Harris & Brooks</u> involved professionals engaged in activities related to their trades.  It does not necessarily follow that a personal property owner who blithely disposed of his yard waste in an irresponsible manner is held to the same standard as a professional clear cutter.  <u>See</u> <u>Abellon v. Hartford Ins. Co.</u>, 167 Cal. App. 3d 21, 32 (1985) (noting in passing that courts are "required to resolve uncertainties in favor of the insured and to interpret the policy provisions according to the layman's reasonable expectations").

An insured's failure to take reasonable measures to prevent harm to those to whom a duty of care is owed may constitute negligence, but such behavior does not preclude accident insurance coverage.  <u>See</u> <u>Safeco Ins. Co. of Am. v. Robert S.</u>, 28 P.3d 889, 894 (Cal. 2001) ("[T]he term 'accident' is more comprehensive than the term 'negligence' and . . . includes negligence."); <u>see also</u> Cal. Ins. Code § 533 ("An insurer . . . is not exonerated by the negligence of the insured . . . .").  The proper focus of a coverage inquiry is whether the insured's intentional acts were entirely responsible for the damages incurred; plaintiff has failed to present undisputed facts that conclusively demonstrate this.

Based on these facts, the court cannot hold, as a matter of law, that plaintiff has no duty to indemnify Moreno for the sinking of Harvey's dock.  Harvey has presented evidence which suggests that unintended, secondary events placed the log

1  in a position to harm the barge.  Consequently, the harm suffered

2  did not undisputably result entirely from Moreno's intentional

3  acts and thus may constitute an accident covered by the term's of

4  plaintiff's insurance policy.

5          IT IS THEREFORE ORDERED that plaintiff's motion for

6  summary judgment be, and the same hereby is, DENIED.

7  DATED:  March 8, 2006

8

9

          WILLIAM B. SHUBB
10         UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPENDIX[2]

**SCOTTSDALE INSURANCE COMPANY, Plaintiff-counter-defendant-Appellee**
**v. HENRY MORENO; LA MANSION DEL RIO, Defendants and WALTER**
**HARVEY, Defendant-counter-claimant -Appellant**

**No. 03-17061**

**UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

*133 Fed. Appx. 415; 2005 U.S. App. LEXIS 10075*

**May 13, 2005, Argued and Submitted, San Francisco, California**
**May 27, 2005, Filed**

**NOTICE: [**1]** RULES OF THE NINTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Amended by, Rehearing denied by *Scottsdale Ins. Co. v. Moreno, 2005 U.S. App. LEXIS 12281 (9th Cir. Cal., June 23, 2005)*

**PRIOR HISTORY:** Appeal from the United States District Court for the Eastern District of California. D.C.No.CV-02-01890-WBS/GGH. William B. Shubb, Chief Judge, Presiding.

**COUNSEL:** For SCOTTSDALE INSURANCE COMPANY, Plaintiff-counter-defendant-Appellee: Nicholas Banko, Esq., Linda W. Hsu, Esq., SELMAN BREITMAN LLP, San Francisco, CA

For HENRY MORENO, Defendant:

For LA MANSION DEL RIO, Defendant:

For WALTER HARVEY, Defendant-counter-claimant-Appellant: Mark S. Newman, Esq., BORTON, PETRINI & CONRON, LLP, Rancho Cordova, CA; Paul A. Pereira, Esq., POOLE & PEREIRA, Sacramento, CA

**JUDGES:** Before: HAWKINS and GRABER, Circuit Judges, and SELNA, ** District Judge.

** The Honorable James V. Selna, United States District Judge for the Central District of California, sitting by designation.

**OPINION:**

**[*416] MEMORANDUM ***

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by *Ninth Circuit Rule 36-3.*

**[**2]**

Walter Harvey appeals the district court's decisions to: (1) grant in part Scottsdale Insurance Company's motion to strike affidavits submitted by Joseph Countryman; (2) grant Scottsdale's motion for summary judgment; and (3) deny Harvey's motion for summary judgment. We reverse the decisions to strike Countryman's affidavits and grant summary judgment on Scottsdale's motion, and remand the remaining issues to the district court.

The district court's decision to strike portions of Countryman's affidavits is an evidentiary decision made in the context of a summary judgment motion, and thus is reviewed for an abuse of discretion. *Wong v. Regents of Univ. of Cal., 379 F.3d 1097, 1103 (9th Cir. 2004).* The district court's decisions to grant Scottsdale's motion for summary judgment and deny Harvey's motion for summary judgment, however, are reviewed *de novo. Lopez v. Smith,*

---

[2]   Pursuant to Ninth Circuit Rule 36-3(b), (c), this court must attach as an appendix any unpublished Ninth Circuit case that is "relevant under the doctrine of law of the case . . . ."

*203 F.3d 1122, 1131 (9th Cir. 2000)*(en banc).

A party cannot create a material issue of fact on a motion for summary judgment by offering an affidavit that "flatly contradicts" the affiant's prior testimony. *Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266-67 (9th Cir. 1991)*; **[\*\*3]** *Radobenko v. Automated Equip. Corp., 520 F.2d 540, 544 (9th Cir. 1975)*. We need not consider whether the sham affidavit rule applies to testimony given in separate but related litigation because we find that Countryman's testimony was not inconsistent in any event.

The issue in the prior action was whether Harvey's docking facility sank as the result of Henry Moreno's negligence. It was enough for Countryman simply to link **[\*417]** the ultimate cause of the loss to logs placed in the river by Moreno. The events that took place prior to October and November 1998 were ancillary to that issue.

In contrast, the focus of the instant action is whether Moreno's logs that were lodged in Harvey's docking facility in July 1998 contributed to the ultimate loss. Countryman's affidavits therefore place more emphasis on the cyclical stress that allegedly was caused during that time. Notwithstanding the fact that Countryman, in his prior trial testimony, failed to link the stress caused in July 1998 to the ultimate cause of Harvey's property damage in November 1998, nothing in his affidavits "flatly contradicts" his prior testimony. Indeed, Countryman's prior testimony and present affidavits **[\*\*4]** are reconcilable when viewed in light of the respective relevant issues. The district court therefore abused its discretion by striking portions of Countryman's affidavits as shams.

With regard to Scottsdale's summary judgment motion, the stricken portions of the Countryman affidavits are sufficient to create a material issue of fact with respect to when damage to the barge commenced. Furthermore, Harvey is not collaterally estopped from advancing a "continuous injury" theory because the issue of when the damage first occurred to Harvey's docking facility was not "necessarily decided" in the prior action. See *Rice v. Crow. 81 Cal. App. 4th 725, 97 Cal. Rptr. 2d 110, 116 (Ct. App. 2000)*. The grant of summary judgment therefore must be reversed. *FED. R. CIV. P. 56(c)*.

The orders granting Scottsdale's motion to strike and Scottsdale's motion for summary judgment are **REVERSED.** The case is **REMANDED.**

8