**FILED**

JUN - 8 2006

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, | CASE NO.  S-02-1890 WBS GGH |
| Plaintiff, | STIPULATION AND [PROPOSED] ORDER REGARDING ADMISSIBILITY OF UNDISPUTED FACTS IN LIEU OF PRESENTATION OF EVIDENCE AT TRIAL |
| v. | |
| HENRY MORENO, ROSE A. MORENO, LA MANSION DEL RIO, WALTER HARVEY, and DOES 1 through 100, inclusive, | [L.R. 83-143]<br><br>Trial Date : June 13, 2006<br>Time      : 9:00 a.m. |
| Defendants. | Dept      : Court Room No. 5<br>Judge     : William B. Shubb |

Plaintiff SCOTTSDALE INSURANCE COMPANY and Defendant WALTER
HARVEY, through their respective counsel of record, hereby enter
into this stipulation regarding the admissibility of undisputed
facts in lieu of presentation of evidence at trial commencing on
June 13, 2006 at 9:00 a.m., in the above-referenced United States
District Court for the Eastern District of California.

///

///

///

1

STIPULATION AND [PROPOSED] ORDER REGARDING ADMISSIBILITY OF UNDISPUTED FACTS IN
LIEU OF PRESENTATION OF EVIDENCE AT TRIAL - CASE NO. S-02-1890 WBS GGH

109117.1 380.14844

1    This stipulation is entered by and between the parties so as

2    to facilitate trial of this matter, is binding on the parties and

3    relieves each of producing evidence to prove the stipulated

4    facts. Spaulding v. City of Tulsa, Oklahoma (10th Cir. 1996) 95

5    F.3d 1492, 1501-1502. Moreover, the scope of this stipulation

6    includes both the matters actually stipulated, as well as,

7    reasonable inferences that may be drawn therefrom. United States

8    v. Baker (9th Cir. 1979) 589 F.2d 1008. By entering into this

9    stipulation neither party waives and expressly reserves the right

10    to request a jury instruction regarding the effect of this

11    stipulation. While stipulations conclusively establish a fact,

12    the factfinder ultimately determines the weight to be given the

13    stipulated fact. O'Connor v. City & County of Denver (10th Cir.

14    1990) 894 F.2d 1210, 1225-1226. Nothing in this stipulation is

15    intended by either party to define the scope of issues that are

16    to be presented to a jury and the following stipulated facts may

17    be relevant to jury questions, Court determinations, or both.

18    The stipulated facts are as follows:

19  **I.   FACTS REGARDING THE SCOTTSDALE INSURANCE COMPANY POLICY.**

20    1.   Scottsdale Insurance Company ("Scottsdale") issued a

21    general liability insurance policy number CPS0238393 to named

22    insured Henry A. Moreno (d/b/a La Mansion Del Rio) (hereinafter

23    the "Scottsdale Policy").

24    2.   The Scottsdale Policy incepted on April 23, 1998.

25    3.   The Scottsdale Policy provides, in relevant part:

26        a.   We will pay those sums that the insured becomes
            legally obligated to pay as damages because of

27            "bodily injury" or "property damage" to which this

28

2

109117.1 380.14844

1          insurance applies. [...]

2          b.   This insurance applies to "bodily injury" and
                "property damage" only if:

3
4               (1)   The "bodily injury" or "property damage" is
                      caused by an "occurrence"...; and

5               (2)   The "bodily injury" or "property damage"
                      occurs during the policy period.

6
7      4.   The Scottsdale Policy defines "occurrence" as "an

accident, including continuous exposure to substantially the same

8  general harmful conditions".

9
10     5.   The Scottsdale Policy defines "property damage", in

relevant part, as "physical injury to tangible property,

11  including all resulting loss of use of that property...".

12
13  **II.   FACTS REGARDING THE HARVEY/MORENO PROPERTIES.**

14     6.   Scottsdale's policyholder Henry Moreno (d/b/a La

Mansion Del Rio) was developing the property for a restaurant on

15  the Sacramento River, specifically identified as 2125 Garden

16  Highway, Sacramento, California (the "Moreno Property").

17     7.   Defendant Walter Harvey owned property located

18  approximately 100 feet downriver from the Moreno Property,

19  specifically identified as 2111 Garden Highway, Sacramento,

20  California (the "Harvey Property").

21
22  **III. FACTS REGARDING CONFIGURATION OF THE HARVEY DOCK FACILITY.**

23     8.   Prior to 1998, Defendant Harvey constructed a dock

facility on his property (the "Harvey Dock Facility").

24
25     9.   The Harvey Dock Facility consisted of various

components, including, but not limited to, access ramps, a

26  floating barge, pile rings, several piles, boat barge, dock, and

27
28                                  3
**STIPULATION AND [PROPOSED] ORDER REGARDING ADMISSIBILITY OF UNDISPUTED FACTS IN
LIEU OF PRESENTATION OF EVIDENCE AT TRIAL - CASE NO. S-02-1890 WBS GGH**

1  a debris deflector.

2      10.  To gain access from the shoreline, one would walk down
3  the access ramp to the floating barge.

4      11.  The barge was constructed of steel plates, with various
5  internal compartments separated by bulkheads.

6      12.  The barge was about 18 feet wide by 30 feet long.

7      13.  The barge was about four-and-one-half to five feet
8  deep.

9      14.  So that the barge and attached dock components would
10  not float downstream, the barge was attached to two metal piles.

11     15.  For purposes of this action, a pile is defined as a
12  column usually of timber, steel, or reinforced concrete driven
13  into the riverbed to carry a horizontal load.

14     16.  In this case, the two piles anchoring the barge were
15  made of 24" diameter, 5/8" thick steel.

16     17.  In this case, the two steel piles were driven into the
17  bed of the Sacramento River.

18     18.  The barge was attached to the piles by use of two pile
19  rings.  The pile rings were constructed out of a heavy steel pipe
20  which were welded into a square shape.

21     19.  The feet of the squares were welded to the barge.

22     20.  The opening of each square enclosed a steel pile.

23     21.  One purpose of the pile/pile ring mechanism was to hold
24  the barge next to the piles.

25     22.  One purpose of the pile/pile ring mechanism was to
26  allow the barge to rise and fall with the level of the river.

27  ///

28

4

1    23.  Up river and in front of the barge was a debris
2    deflector.

3    24.  The debris deflector was twenty-four inch diameter
4    steel extending sixty-five feet out into the Sacramento River at
5    a forty-five degree angle.

6    25.  The purpose of the debris deflector was to take objects
7    floating in the river and direct them out into the river and away
8    from the docking facility.

9    26.  The barge also included pumps which were used to pump
10   out excess water from the barge compartments.

11   **IV.  FACTS REGARDING HENRY MORENO'S DOCK FACILITY.**

12   27.  Prior to 1998, Defendant Harvey's neighbor Henry Moreno
13   decided to construct a dock facility on the property he was
14   developing.

15   28.  Although Henry Moreno started this dock construction
16   project, it was never completed.

17   29.  As part of and during the dock construction project,
18   Henry Moreno obtained portions of an unused dock consisting of
19   styrofoam topped with a layer of concrete (hereinafter "dock
20   sections").

21   30.  Henry Moreno temporarily secured the dock to his
22   property by use of ropes.

23   **A.    Concrete Sections From Henry Moreno's Planned Dock.**

24   31.  Defendant Harvey was concerned that the ropes used by
25   Henry Moreno to temporarily secure his dock to his property were
26   insufficient given the currents and seasonal fluctuations of the
27   Sacramento River.

28

5

109117.1 380.14844

1    32. Defendant Harvey was concerned that pieces of Henry
2    Moreno's dock would break free.

3    33. Defendant Harvey was concerned that if pieces of Henry
4    Moreno's dock broke free they may float down river and impact his
5    docking facility.

6    34. Defendant Harvey asked Henry Moreno to secure his dock
7    with steel cables.

8    35. Henry Moreno did not secure his dock with steel cables.

9    36. In late 1997 or early 1998, pieces of Henry Moreno's
10   dock broke free and some became lodged in Defendant Harvey's
11   debris deflector.

12   37. In late 1997 or early 1998, no damage occurred to
13   Defendant Harvey's dock facility from these dock pieces.

14   38. In late 1997 or early 1998, Defendant Harvey asked
15   Henry Moreno to remove the pieces of the dock sections caught on
16   the debris deflector. Henry Moreno complied.

17   39. During May of 1998, Defendant Harvey had boats moored
18   to his dock facility.

19   40. During May of 1998, a piece of Henry Moreno's dock
20   broke free, traveled downstream, went underneath Defendant
21   Harvey's debris barrier and impacted Harvey's Chris Craft boat.

22   41. As result of the above-stated impact, the hull of
23   Defendant Harvey's Chris Craft was breached requiring it to be
24   brought to dry dock for repair.

25   42. Defendant Harvey told Henry Moreno about the damage to
26   his boat.

27   ///

28
6
STIPULATION AND [PROPOSED] ORDER REGARDING ADMISSIBILITY OF UNDISPUTED FACTS IN
LIEU OF PRESENTATION OF EVIDENCE AT TRIAL - CASE NO. S-02-1890 WBS GGH

109117.1 380.14844

1       43.   Repair of the boat cost about $7,400.00.

2   **V.   FACTS REGARDING HENRY MORENO'S RENOVATION WORK.**

3       44.   During 1998, Henry Moreno was renovating the property

4   he was developing so as to convert it into a river-side

5   restaurant known as La Mansion Del Rio.

6       45.   In the Spring of 1998, Defendant Harvey observed that

7   Henry Moreno was placing construction materials, branches, tree

8   trimmings and pieces of carpet in the river (hereinafter

9   "construction debris").

10       46.   Some of the construction debris impacted Defendant

11   Harvey's debris deflector and a portion came in contact with

12   Harvey's dock facility.

13       47.   In July 1998, Defendant Harvey observed a stock-piling

14   of tree branches, bricks and sheetrock on Henry Moreno's property

15   (hereinafter "additional construction debris").

16       48.   This additional construction debris was piled right

17   next to the Sacramento river.

18       49.   Concerned that this additional construction debris

19   would be dumped into the river and create a hazard or possibly

20   become entangled with his marine docking facility, Defendant

21   Harvey spoke with Henry Moreno about Harvey's concerns.

22       50.   Defendant Harvey explained to Henry Moreno that not all

23   of the construction debris floats.

24       51.   In July 1998, Henry Moreno directed employees,

25   including Mr. Meteku Dingle and Mr. James Williams, to dispose of

26   several logs into the river.

27   ///

28

7

109117.1 380.14844

1      52.  Henry Moreno or his employees also placed portions of
2   felled trees cleared from his property into the river over a
3   period of three to four weeks.

4      53.  Some of these logs traveled down river, evaded the
5   debris deflector and impacted Defendant Harvey's dock facility.

6      54.  As a result, a seam on one of the compartments on the
7   port side of the barge opened up.  Defendant Harvey reported this
8   to Henry Moreno.

9      55.  As a result of the opened seam, water leaked into
10   Defendant Harvey's barge.

11      56.  Defendant Harvey attempted to fix the leak by sealing
12   the seam with epoxy.

13      57.  After the barge hull was breached, Defendant Harvey
14   used-additional pumps to remove water from the barge.

15

16   **VI.  FACTS REGARDING A LOG BECOMING WEDGED BETWEEN HARVEY'S BARGE
          AND ONE OF THE TWO PILINGS.**
17

18      58.  Two logs became wedged between the barge and one of the
19   two pilings to which the barge was attached.

20      59.  While one of the logs was removed, the other remained
21   wedged between the pile and the barge hull.

22   **VII. THE DISAPPEARANCE OF HENRY MORENO.**

23      60.  In August 1998, Henry Moreno disappeared.  To date, his
24   whereabouts are unknown.

25   ///

26   ///

27   ///

28                                    8
     STIPULATION AND [PROPOSED] ORDER REGARDING ADMISSIBILITY OF UNDISPUTED FACTS IN
     LIEU OF PRESENTATION OF EVIDENCE AT TRIAL - CASE NO. S-02-1890 WBS GGH

109117.1 380.14844

1    **VIII.    FACTS REGARDING DEFENDANT HARVEY'S DOCK FACILITY
          SINKING IN NOVEMBER 1998.**

2

3         61.    On or about November 28, 1998, Defendant Harvey's dock

4    facility sank.

5    **IX.    FACTS REGARDING THE UNDERLYING LAWSUIT.**

6         62.    On July 23, 1999, Harvey filed a complaint against,

7    among others, Henry Moreno and La Mansion Del Rio in Sacramento

8    County Superior Court, Case No. 99AS04107 (the "Underlying

9    Action").

10        63.    Plaintiff Scottsdale defended its insured Mr. Henry

11   Moreno (d/b/a La Mansion Del Rio) in the Underlying Action.

12        64.    Trial in the Underlying Action took place from June 11

13   to June 14, 2001.

14        65.    On or about June 19, 2001, the jury reached a verdict

15   and a judgment was entered in favor of Harvey and against Mr.

16   Henry Moreno for $445,375.00 which included was for the loss of

17   the dock facility and the Chris Craft.

18

19   DATED: May 30, 2006        SELMAN BREITMAN LLP

20

21                              By:    /s/
                                       LINDA WENDELL HSU    (SBN 162971)
22                                     JAMES R. TENERO      (SBN 201023)
                                       Attorneys for Plaintiff
23                                     SCOTTSDALE INSURANCE COMPANY

24

25   ///

26   ///

27   ///

28                                          9
     **STIPULATION AND [PROPOSED] ORDER REGARDING ADMISSIBILITY OF UNDISPUTED FACTS IN
     LIEU OF PRESENTATION OF EVIDENCE AT TRIAL - CASE NO. S-02-1890 WBS GGH**

109117.1 380.14844

1    DATED: May 30, 2006        BORTON, PETRINI & CONRON LLP

2

3                               By:   /s/ MARK S. NEWMAN
                                      (as authorized on May 30, 2006)
4                                     MARK S. NEWMAN        (SBN 107012)
                                      Attorneys for Defendant
5                                     WALTER HARVEY

6
     DATED: May 30, 2006        LAW OFFICES OF POOLE & PEREIRA
7

8
                                By:   /s/ PAUL A. PEREIRA
9                                     (as authorized on May 30, 2006)
                                      PAUL A. PEREIRA     (SBN 128539)
10                                    Attorneys for Defendant
                                      WALTER HARVEY
11

12
     IT IS SO ORDERED,
13

14   DATED:  May 31, 2006

15                                    William B. Shubb

16                              WILLIAM B. SHUBB
                                UNITED STATES DISTRICT JUDGE
17

18

19

20

21

22

23

24

25

26

27

28                                      10
     STIPULATION AND [PROPOSED] ORDER REGARDING ADMISSIBILITY OF UNDISPUTED FACTS IN
     LIEU OF PRESENTATION OF EVIDENCE AT TRIAL – CASE NO. S-02-1890 WBS GGH